1

2

3

4

5

6

7    UNITED STATES DISTRICT COURT

8    NORTHERN DISTRICT OF CALIFORNIA

9

DAVID and LISA FAIGMAN, individually and on
10   behalf of others similarly situated,

11                                                      No. C 06-04622 MHP
              Plaintiffs,
12
        v.                                             **MEMORANDUM & ORDER**
13                                                     **Re: Defendant's Motion to Dismiss**
AT&T MOBILITY LLC, formerly known as
14   CINGULAR WIRELESS, LCC; and DOES 1 through
100, inclusive,
15
              Defendants.
16   _____/

17
         Plaintiffs David and Lisa Faigman ("plaintiffs"), individually and on behalf of a class of
18
others similarly situated, filed this action in California Superior Court for the County of San
19
Francisco against AT&T Mobility LLC, formerly known as Cingular Wireless, LLC ("Cingular" or
20
"defendant") and Does 1 through 100, inclusive.[1]  Defendant removed the action to this court.
21
Plaintiffs filed their first amended complaint ("FAC") in April 2007 seeking damages for violations
22
of the Consumer Legal Remedies Act ("CLRA"), violations of the False Advertising Act, violations
23
of the Unfair Competition Law, and unjust enrichment.  Now before the court is defendant's motion
24
to dismiss plaintiffs' FAC for failure to state a claim on which relief can be granted pursuant to
25
Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  Having considered the parties'
26
arguments and submissions, and for the reasons set forth below, the court enters the following
27
memorandum and order.
28

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2    BACKGROUND[2]

3         Plaintiffs are California residents who claim that they were misled into purchasing mobile

4    phones and service contracts from Cingular as a result of a misleading rebate program. Defendant

5    Cingular is the nation's largest mobile phone company in terms of subscribers and revenue,

6    operating nationwide with a substantial amount of business in California. Cingular has fifteen retail

7    stores in the city of San Francisco.

8         As part of its marketing efforts, Cingular advertises the availability of rebates in exchange

9    for the purchase of its products or services. According to plaintiffs, "[f]ollowing the custom of other

10   rebate offers it has offered in the past, Cingular's advertising seeks to convey the impression that

11   once a customer mails in a completed rebate form, he or she will receive the value of the rebate in

12   cash or by check." FAC ¶ 17. In 2005, Cingular discontinued its use of rebate checks and has since

13   issued "Cingular VISA Rewards Cards," which function similarly to a debit card and carry a

14   maximum balance of $50 each.

15        Plaintiffs claim that Cingular's practice of marketing its rebates as directly reducing the cost

16   of Cingular cell phones by the dollar amount of the rebate is misleading because the VISA Rewards

17   Cards do not reduce the cost of Cingular phones by the value of the rebate. Id. ¶¶ 13–15. The cards

18   are less valuable than cash or check, according to plaintiffs, due to the limitations and restrictions

19   placed upon the use of the cards. Id. Plaintiffs identify the following restrictions which are not

20   disclosed in Cingular's advertisements: the cards must be activated, the cards are only accepted at

21   certain locations, the cards can incur service charges, the cards will be declined in transactions that

22   exceed the balance of the card, the cards expire, the cards are not redeemable for cash, the cards do

23   not earn interest, the cards are not divisible, the cards are not transferrable, the cards collect private

24   information, and the cards are issued in maximum increments of $50. Id. ¶16. Plaintiffs further

25   claim that these programs have led to numerous customer complaints. Id. ¶ 30.

26        Plaintiffs purchased three mobile phones and signed up for two-year service contracts with

27   Cingular in October 2005 via a Cingular retail store in San Rafael, California. Id. ¶¶ 33-34. While

28

UNITED STATES DISTRICT COURT
For the Northern District of California

2

1    at the store, plaintiff Lisa Faigman noticed that rebates were offered on various phone models,

2    including models advertised as "buy one, get one free" after rebate, and "free" after rebate. Id. ¶ 33.

3    Based on these advertisements, Lisa Faigman and her husband David, whom she called while in the

4    store, decided to purchase the phones and enter into a service contract with Cingular. Id. ¶ 34.  Lisa

5    Faigman received her rebate forms after completing the purchase transaction, which David Faigman

6    thereafter completed and submitted.[3]  Id. ¶¶ 35–36.  Plaintiffs claim that after the purchase

7    transaction and completion of the rebate forms, they did not realize that Cingular would tender the

8    rebates with VISA Rewards Cards, and that Lisa Faigman expected that Cingular would tender the

9    rebates via check.  Id. ¶¶ 35–36.  Plaintiffs were surprised when they received three VISA Rewards

10   Cards for $30 each (one for each phone purchased from Cingular) instead of cash or checks.  Id. ¶

11   37.  Plaintiffs assert that they have encountered difficulties and inconvenience when attempting to

12   use the cards, including activation and rejection.  Id. ¶ 38.  Specifically, plaintiffs claim that their

13   card was rejected at a Chevron gas station.  Id.

14         Plaintiffs filed this action in California Superior Court on June 23, 2006.  Plaintiffs asserted

15   causes of action for violations of the Consumer Legal Remedies Act, violations of the False

16   Advertising Act, concealment, violations of the Unfair Competition Law, and unjust enrichment.

17   On July 28, 2006 defendant removed the action to this court pursuant to 28 U.S.C. section 1441,

18   alleging jurisdiction based upon the Class Action Fairness Act of 2005, 28 U.S.C. section 1332(d).

19   On March 2, 2007 defendant's motion to dismiss plaintiffs' original complaint pursuant to Rule

20   12(b)(6) was granted with leave to amend.  Docket Entry 64 (hereinafter "March Order").  Plaintiffs

21   timely filed their FAC on April 16, 2007 seeking damages for violations of the Consumer Legal

22   Remedies Act, violations of the False Advertising Act, violations of the Unfair Competition Law,

23   and unjust enrichment.  Defendant now moves again to dismiss plaintiffs' FAC for failure to state a

24   claim upon which relief can be granted.

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

3

1  LEGAL STANDARD

2          Under Federal Rule of Civil Procedure12(b)(6), a motion to dismiss "tests the legal

3  sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In examining the

4  claim's sufficiency, as opposed to its substantive merits, "a court may [typically] look only at the

5  face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc.,

6  284 F.3d 977, 980 (9th Cir. 2002).

7          A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a

8  claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ___U.S.____, 127 S.Ct.

9  1955, 1960, (2007).[4]  Dismissal can be based on lack of a cognizable legal theory or the absence of

10  sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d

11  696, 699 (9th Cir. 1990).  Allegations of material fact are taken as true and construed in the light

12  most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th

13  Cir. 1996).  The court need not, however, accept as true allegations that are conclusory, legal

14  conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden

15  State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752,

16  754-55 (9th Cir. 1994).

17

18  DISCUSSION

19          Defendant alleges that plaintiffs' FAC is defective for the same two reasons articulated in

20  defendant's first motion to dismiss.  First, defendant claims that plaintiffs have again failed to allege,

21  with requisite specificity, misrepresentations on the part of Cingular with respect to the reward card

22  rebate program.  This deficiency would be fatal to all four of plaintiffs' claims.  Second, defendant

23  claims that plaintiffs have again failed to allege that they were injured "as a result of" alleged

24  misrepresentations by Cingular, as they must to sustain a cause of action under the CLRA.

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1   I.          Misrepresentations

2          Defendant claims that each of plaintiffs' causes of action arises out of the same alleged

3   unified course of fraudulent conduct, and that where fraudulent conduct serves as the basis for a

4   cause of action the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply.[5]

5   Because plaintiffs have dropped their concealment cause of action in their amended complaint, fraud

6   is no longer a necessary element of any of the California statutory claims that plaintiffs have set

7   forth.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  However, the

8   requirements of Rule 9(b) may nonetheless apply to discrete allegations within each cause of action.

9   Id.  As the Ninth Circuit has explained:

10                  In cases where fraud is not a necessary element of a claim, a plaintiff
                    may choose nonetheless to allege in the complaint that the defendant
11                  has engaged in fraudulent conduct.  In some cases, the plaintiff may
                    allege a unified course of fraudulent conduct and rely entirely on that
12                  course of conduct as the basis of a claim.  In that event, the claim is
                    said to be "grounded in fraud" or to "sound in fraud," and the pleading
13                  of that claim as a whole must satisfy the particularity requirement of
                    Rule 9(b).
14
                    [. . .]
15
                    In other cases, however, a plaintiff may choose not to allege a unified
16                  course of fraudulent conduct in support of a claim, but rather to allege
                    some fraudulent and some non-fraudulent conduct.  In such cases, only
17                  the allegations of fraud are subject to Rule 9(b)'s heightened pleading
                    requirements.
18
    Id. at 1103–04. Where a complaint or claim is grounded in fraud and the averments of fraud are
19
    insufficiently pled, "there is effectively nothing left of the complaint" and dismissal under Rule
20
    12(b)(6) is warranted.  Id. at 1107.
21
           This court has held that each of plaintiffs' causes of action rests upon an allegation of
22
    fraudulent conduct in the form of misrepresentations made by Cingular regarding its rebate
23
    programs.  March Order at 5.  Again, plaintiffs admit in their complaint that "[a]ll of the claims
24
    asserted herein arise out of Cingular's misleading and unfair advertisements and marketing
25
    campaign regarding its rebate programs . . . ."  FAC ¶ 3.  Each of plaintiffs' causes of action still
26
    contains an explicit or implicit reference to fraud.  FAC ¶¶ 55 ("defendants knowingly
27

28

5

1  misrepresented the legal rights, obligations, or remedies involved in the purchase and sale of

2  Cingular service and products"), 60 (defendants' conduct "constitutes unfair competition, unfair,

3  deceptive, untrue or misleading advertising . . ."), 65 (defendants' conduct constitutes "a continuing

4  course of conduct of unfair competition because defendants are marketing and selling their phones

5  and services in a manner that is likely to deceive the public . . ."), 67 (defendants' practices "were

6  likely to deceive consumers into purchasing services or products under . . . false pretense . . ."), & 72

7  ("As a direct and proximate result of defendants' misleading and unfair business practices,

8  defendants have been unjustly enriched."). Because each of plaintiffs' claims is thus "grounded in

9  fraud," each claim "as a whole" is subject to heightened pleading requirements. Vess, 317 F.3d at

10  1103–04.

11      Plaintiffs correctly observe, however, that this court addressed the applicability of Rule

12  9(b)'s heightened standard to claims brought under the CLRA in Nordberg v. Trilegiant Corp., 445

13  F. Supp. 2d 1082, 1097–98 (N.D. Cal. 2006) (Patel, J.). In Nordberg, the court held that while the

14  requirements of Rule 9(b) were not strictly applicable to a CLRA claim, plaintiffs were "still

15  required to provide some specificity in their pleadings to put defendants on notice of the charges

16  leveled against them." Id. The question is whether plaintiffs have met the requirements of this

17  intermediate standard in their complaint.

18      Defendant claims that plaintiffs have failed to plead facts specific enough to satisfy this

19  requirement in their complaint. First, defendant argues that plaintiffs fail to identify "any

20  misleading advertisement or marketing by Cingular with respect to the VISA Reward Card

21  program." Plaintiffs have, however, identified language that they claim to be misleading.

22  Specifically, plaintiffs describe the promotional materials that Lisa Faigman saw inside the Cingular

23  store which advertised phones as "buy one, get one free" after rebate and "free" after rebate. FAC ¶

24  33. The legally relevant question is whether a reasonable consumer would believe Cingular's

25  marketing to be misleading.[6] See Williams v. Gerber Products Co., 439 F. Supp. 2d 1112, 1115

26  (S.D. Cal. 2006). The court finds that a reasonable consumer, upon seeing an advertisement that

27  promises a "rebate" of a certain amount, would generally understand that advertisement to mean that

28

UNITED STATES DISTRICT COURT
For the Northern District of California

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1    the amount will be returned to the consumer in cash, check or its equivalent.  Other forms of tender,

2    such as the VISA Reward Cards at issue in the instant case, may satisfy this expectation.  However,

3    the more terms, conditions and restrictions that are placed upon a form of tender, the less equivalent

4    it becomes to cash or check.  In their complaint, plaintiffs list various restrictions on the VISA cards

5    that allegedly reduce their value.  For example, the VISA cards must be activated, the cards are only

6    accepted at certain locations, the cards can incur service charges, the cards will be declined in

7    transactions that exceed the balance of the card, the cards expire, the cards are not redeemable for

8    cash, the cards do not earn interest, the cards are not divisible, the cards are not transferrable, the

9    cards collect private information, and the cards are issued in maximum increments of $50.  FAC ¶

10   16.  Still more terms and conditions are included in the documents that come with the phone upon

11   purchase.  Pls.' Exh. D.  An additional two pages worth of terms and conditions arrive when

12   customers receive their VISA Rewards Cards.  Pls.' Exh. A.  These numerous terms and conditions

13   raise an issue of fact about whether the VISA cards could reasonably be interpreted as equivalent to

14   cash or check.  For purposes of this motion the court must assume that the cards are not equivalent.

15   Assuming arguendo that the VISA cards are materially different from cash or check, advertising the

16   cards as a "rebate" would not be in line with the expectations of reasonable consumers.  Plaintiffs

17   have identified language in Cingular's advertising that promises "rebates" where consumers in fact

18   receive VISA Reward Cards, and therefore, defendant's argument that plaintiffs' complaint should

19   be dismissed for failure to identify "any misleading advertisement" is unavailing.[7]

20        Next, defendant argues that plaintiffs have not described Cingular's advertisements with

21   sufficient particularity.  Plaintiffs have described the specific advertisements that Lisa Faigman saw

22   at the Cingular store containing language such as "buy one, get one free" after rebate and "free"

23   after rebate, and have attached additional representative samples of advertisements containing

24   similar language to their complaint.  FAC ¶ 33, Pls.' Exhs. B & C.  The United States District Court

25   for the Southern District of California has held that where alleged misrepresentations occur in

26   printed form, the particularity requirements of Rule 9(b) may be satisfied by "identifying or

27   attaching representative samples of [misleading] materials."  Von Grabe v. Sprint PCS, 312 F. Supp.

28

7

UNITED STATES DISTRICT COURT
For the Northern District of California

1  2d 1285, 1306 n.19 (S.D. Cal. 2003).  Notably, plaintiffs' complaint averring a cause of action under

2  the CLRA is not strictly required to rise to the level of specificity mandated by Rule 9(b).  Nordberg,

3  445 F. Supp. 2d at 1097–98.  Because attaching representative samples satisfies the heightened

4  particularity standard of Rule 9(b), plaintiffs' complaint meets the intermediate particularity

5  standard at issue here.

6        Last, defendant argues that the samples plaintiffs attached to their complaint are not the

7  actual promotional materials that Lisa Faigman saw at the Cingular store at the time of purchase, and

8  therefore, plaintiffs have failed to plead a cause of action under the CLRA with sufficient

9  particularity to put defendants on notice of the charges leveled against them.  This argument is

10  unpersuasive for three reasons.

11        First, plaintiffs state in their complaint that they "believe that the 'mail-in rebate card'

12  language appeared uniformly in Cingular's newspaper ads, direct mail ads, and *in-store displays.*"

13  FAC ¶ 18 (emphasis added).  This would include the in-store displays Lisa Faigman saw in October

14  2005, described at paragraph 33 of plaintiffs' complaint.  Even if the representative samples are not

15  the actual advertisements Lisa Faigman saw, they are likely very similar considering plaintiffs'

16  allegations regarding Cingular's uniformity in marketing.

17        Second, plaintiffs allege in their complaint that Cingular modified the language of its

18  advertisements after the Faigmans filed suit in June 2006.  Requiring plaintiffs to attach a copy of

19  the actual in-store promotional material that Lisa Faigman saw in 2005 would be unduly difficult

20  without discovery since Cingular is likely the only entity with access to the actual, discontinued, in-

21  store advertisements Lisa Faigman saw in October 2005.

22        Lastly, Nordberg does not require, as defendants suggest, that a cause of action under the

23  CLRA be dismissed if plaintiffs cannot identify the unique advertisement which actually induced

24  plaintiffs to act.  Nordberg, 445 F. Supp. 2d at 1097–98.  In Nordberg, plaintiffs' claims under Cal.

25  Civ. Code sections 1770(a)(1), (3), (5) and (9) were dismissed not because plaintiffs failed to

26  identify advertisements which actually induced plaintiffs to act, but because the harm plaintiffs

27  suffered was not caused by defendants' advertising at all.  Plaintiff Nordberg had specifically

28

8

1   declined defendants' services on the phone and was nonetheless charged, and plaintiff Smith was

2   charged without ever having seen any of defendants' advertising.  Id. at 1098.  Nordberg's claim

3   under section 1770(a)(14)—the same section at issue in the instant case—was found to have been

4   pled with requisite specificity given that it described Nordberg's personal experience with

5   defendants' representatives: when the alleged misrepresentations were made to her, approximate

6   dates, the manner in which Nordberg discovered that defendants' representations were inaccurate,

7   and the content of defendants' alleged omissions.  Id.  Here plaintiffs have included the approximate

8   dates of their interactions with Cingular, the content of Cingular's allegedly misleading

9   representations, the content of Cingular's alleged omissions, and the manner in which plaintiffs

10  discovered the omissions.

11          Because plaintiffs' have identified allegedly misleading language in Cingular's

12  advertisements, described the advertisements with particularity and attached representative samples

13  of Cingular's advertisements to the complaint, plaintiffs' complaint is sufficiently particular to put

14  Cingular on notice of the charges leveled against them.

15

16  II.      Causation

17          As an alternative ground for dismissal, defendant claims that plaintiffs have failed to plead

18  that they were injured "as a result of" Cingular's alleged misrepresentations, a purported defect fatal

19  to plaintiffs' cause of action under the CLRA.[8]

20          The right to bring a private cause of action under the CLRA is limited to "[a]ny consumer

21  who suffers any damage as a result of the use or employment by any person of a method, act, or

22  practice declared to be unlawful by [California Civil Code] Section 1770."  Cal. Civ. Code § 1780.

23  Relief under the CLRA is therefore "specifically limited to those who suffer damage, making

24  causation a necessary element of proof."  Wilens v. TD Waterhouse Group, Inc., 120 Cal. App. 4th

25  746, 754 (2003); see also Caro v. Procter & Gamble Co., 18 Cal. App. 4th 644, 668 (holding that the

26  requirements of the CLRA were not met where the purported class representative did not believe the

27  alleged misrepresentation to be true).

28

UNITED STATES DISTRICT COURT
For the Northern District of California

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Defendant claims that courts have construed the "as a result of" language in the CLRA to

2  require a plaintiff to allege causation and actual reliance as "a necessary element of proof."  While

3  both of the cases defendants cite in support of this claim do identify causation as a necessary

4  element of CLRA claims, neither require, or even mention, actual reliance.  See Wilens 120 Cal.

5  App. 4th at 754; see also Caro, 18 Cal. App. 4th at 668.  To prove causation via reliance, courts

6  require defendant's representations to have been a "substantial factor" influencing plaintiffs'

7  decision.  Whitely v. Philip Morris Inc., 117 Cal. App. 4th 635, 678 (2004).  As the California Court

8  of Appeal explained, "[i]t is not necessary that a plaintiff's reliance upon the truth of the fraudulent

9  misrepresentation be the sole or even the predominant . . . factor in influencing his conduct.  It is

10  enough that the representation has played a substantial part, and so has been a substantial factor, in

11  influencing his decision."  Id.  In their complaint, plaintiffs allege that "[i]n making the decision to

12  purchase the phones and enter into a new service contract, the Faigmans were predominantly

13  influenced by the advertised value of the rebates and their understanding that the rebates would be

14  the functional equivalent of cash."  FAC ¶ 39.  This allegation of reliance clearly meets the standard

15  set forth in Whitely, and therefore, plaintiffs have successfully plead the causation requirement of

16  their claim under the CLRA.[9]

17

18  CONCLUSION

19

20    For the reasons stated above, the court DENIES defendant's motion to dismiss.

21    IT IS SO ORDERED.

22

23  Dated: July 17, 2007

24    MARILYN HALL PATEL

25    United States District Court Judge
     Northern District of California

26

27

28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1

## **ENDNOTES**

2

3

4   1. Plaintiffs' original complaint was filed against Cingular Wireless, LLC.  Following plaintiffs'
original complaint, and prior to the filing of plaintiffs' first amended complaint, defendant Cingular
5   Wireless, LLC changed its name to AT&T Mobility LLC. According to plaintiffs' first amended
complaint, AT&T Mobility LLC continues to use the Cingular name, logo and website.  Herein,
6   defendant AT&T Mobility LLC is referred to as "Cingular."

7   2.  Unless otherwise specified, background facts are taken from plaintiffs' first amended complaint,
and are assumed to be true for purposes of this motion only.
8

9   3.  Plaintiffs do not make clear in their complaint when David Faigman filled out and mailed the
rebate forms.  The complaint merely states that he filled them out "after Lisa Faigman returned
10   home."  FAC ¶ 36.  Although the question of whether David Faigman filled out the forms before the
three-day cooling off period expired may be legally significant to issues not considered in this
11   motion, the court need not address this ambiguity here where plaintiffs have pled reliance.

12
4.  In light of the Supreme Court's recent decision in Twombly, defendant argues that plaintiff has
13   failed to allege facts that show plaintiff is "plausibly" entitled to relief.  Although defendant has
correctly articulated the new standard for a motion to dismiss after Twombly, this change does not
14   affect the analysis in this case.

15
5.  Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or
16   mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of
a person may be averred generally."
17

18   6.   Plaintiffs state throughout their complaint that they assumed that they would receive their rebate
in cash or by check.  As the relevant standard is what a reasonable consumer would expect, the court
19   will take the plaintiffs' discussion of their own assumptions to be a claim about what a reasonable
consumer would expect in their situation.  See Williams v. Gerber Products Co., 439 F. Supp. 2d
20   1112, 1115 (S.D. Cal. 2006).

21
7.  Cingular's advertisements often show the price of a phone as the remainder calculated after the
22   subtraction of a savings from a "mail-in rebate card."   At the July 9, 2007 hearing defendant argued
that the term "mail-in rebate card" actually refers to the VISA Reward Card the consumer receives,
23   and therefore, Cingular's advertisements explicitly disclose the fact that customers receive a VISA
card instead of cash or check.  This argument is entirely without merit.  No reasonable consumer
24   expects that the term "mail-in" refers to an item which the seller mails to the consumer; rather, a
reasonable consumer would expect the term to refer to the rebate form the consumer must *mail-in* to
25   the seller to obtain the rebate.  Cingular's own language makes this clear as well.  Nowhere in
Cingular's rebate forms or elsewhere does Cingular say they will be sending customers their "mail-
26   in VISA Reward Card."  Cingular is bound by the language they have created.  The court therefore

27

28

11

1    rejects the argument that "mail-in rebate card" refers to the VISA Reward Cards.

2    8.  In their amended complaint, plaintiffs plead causes of action under California's Unfair
3    Competition Law ("UCL"), Cal. Bus. & Prof. Code sections 17200 et seq., and California's False
     Advertising Law ("FAL"), Cal. Bus & Prof. Code sections 17500 et seq.. The UCL and FAL were
4    amended via a ballot initiative passed in November 2004 such that standing to bring a private claim
5    under either statute is limited to "any person who has suffered injury in fact and has lost money or
     property "as a result of" such unfair competition or false advertising. Cal. Bus. & Prof. Code §§
6    17204 & 17535. Defendants maintain that this language, while clearly limiting standing to
     individuals who have suffered an injury in fact, further imposes a requirement that a private plaintiff
7    has suffered such injury as a result of relying upon the defendant's statutory violation. The question
8    of whether this language implies a requirement of "actual reliance" was taken up by the California
     Supreme Court on November 1, 2006, after plaintiffs filed their original complaint, but prior to the
9    filing of plaintiffs' FAC in the following two cases: Pfizer, Inc. v. Superior Court, 45 Cal. Rptr. 3d
10   840 (2006), and In re Tobacco II Cases, 47 Cal. Rptr. 3d 917 (2006). It is therefore unsettled, as a
     matter of California law, whether actual reliance is required to plead a cause of action under UCL or
11   FAL. As the state's highest court is in the process of deciding this question, it would be imprudent
     for the court to reach the issue at this time. Accordingly, the court reserves judgment on plaintiffs'
12   UCL and FAL claims until after the California Supreme Court issues its decisions on these cases.

13
14   9.  As alternative grounds for proving causation, plaintiffs argue that their allegations regarding the
     inferiority of VISA Reward Cards to cash or check show that Cingular's misrepresentation were
15   material, therefore giving rise to a presumption of reliance. A presumption of reliance arises where
     there is a showing that a misrepresentation was material. Engalla v. Permanente Med. Group, Inc.,
16   15 Cal.4th 951, 977 (1997). Defendant responds by arguing that plaintiffs have failed to identify
     any misrepresentations at all, and that the marketing language Lisa Faigman saw at the Cingular
17   store does not support a finding of materiality. Since plaintiffs have successfully plead reliance
18   under Whitely, a finding that Cingular's alleged misrepresentations were material, therefore giving
     rise to a presumption of reliance, is unnecessary to support plaintiffs' case.

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**